**R.E., individually and on behalf of M.E., et al, Plaintiffs-Appellants,**

v.

**BREWSTER CENTRAL SCHOOL DISTRICT, Defendant-Appellee.**

**15 Civ. 04562 (RMB)**

United States District Court, S.D. New York.

Signed March 30, 2016

Lauren Patrice Peterson, Geraldine A. McMahon, The Law Offices of Gerry McMahon, LLC, Danbury, CT, for Plaintiffs-Appellants.

David Hannum Strong, James P. Drohan, Thomas, Drohan, Waxman, Petigrow & Mayle, LLP, Hopewell Junction, NY, for Defendant-Appellee.

### DECISION & ORDER

Richard M. Berman, United States District Judge

## I. Background

On June 11, 2015, R.E. and D.E. ("Parents") individually and on behalf of their son, M.E. ("M.") (collectively, "Plaintiffs"), commenced this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., against the Brewster Central School District ("Defendant" or "Brewster"). Plaintiffs appeal from adverse administrative decisions of both the New York State Education Department Impartial Hearing Officer ("IHO") and State Review Officer ("SRO"). They request that the Court grant: (1) "compensatory education" relief for the 2011–12 and 2012–13 school years, and (2) reimbursement for M.'s tuition at the Eagle Hill School, a private school in Greenwich, Connecticut ("Eagle Hill"), for the 2013–14 school year. (See Compl., dated June 11, 2015 ("Compl."), at 29.)

The parties agree that: (i) M. entered kindergarten (2006–07 school year) in Brewster and attended Brewster's elementary and middle schools through sixth grade (2012–13 school year) (Pls.' Rule 56.1 Statement, dated Nov. 21, 2015 ("Pls.' 56.1"), ¶ 5; Def.'s Rule 56.1 Response Statement, dated Jan. 8, 2016 ("Def.'s 56.1"), ¶ 5); (ii) in the Spring of 2010, M. was diagnosed with Tourette's Syndrome or "as having symptoms associated with Tourette's Syndrome" (Pls.' 56.1 ¶ 7; Def.'s 56.1 ¶ 7); (iii) in the 2011–12 school year, M. "receive[d] accommodations" from Brewster pursuant to his plan, dated June 2, 2010, under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504 Accommodation Plan"), for symptoms related to Tourette's Syndrome (Pls.' 56.1 ¶¶ 15–16; Def.'s 56.1 ¶¶ 15–16); (iv) in or around November 2011, M. was diagnosed as meeting the criteria for Attention Deficit Hyperactivity Disorder and Obsessive Compulsive Disorder (Pls.' 56.1 ¶¶ 2, 17; Def.'s 56.1 ¶¶ 2, 17); (v) in December 2011, D.E. made a request for M.'s referral to special education and, in January 2012, Brewster's Committee on Special Education convened to develop M.'s Individualized Education Program ("IEP"), pursuant to 20 U.S.C. § 1414, to commence in February 2012 (Pls.' 56.1 ¶¶ 18–19; Def.'s 56.1 ¶¶ 18–19); (vi) by the Spring of 2013, M.'s symptoms (tics) worsened; he attended two hours of school per day in May 2013 and he received home tutoring in June 2013 (Pls.' 56.1 ¶¶ 29–30; Def.'s 56.1 ¶¶ 29–30); and (vii) in August 2013, Plaintiffs notified Brewster that they rejected M.'s IEP for the 2013–14 school year and would (and did) unilaterally place M. at Eagle Hill (Pls.' 56.1 ¶¶ 34–35; Def.'s 56.1 ¶¶ 34–35).

Principal points upon which the parties appear to disagree include: (i) whether Brewster should have identified M. as a student in need of special education services (IEP) in the first half of the 2011–12 school year rather than in or around January 2012 (Pls.' 56.1 ¶ 19; Def.'s 56.1 ¶ 19); (ii) whether Brewster appropriately implemented M.'s IEP during 2012–13 (Pls.' 56.1 ¶ 27; Def.'s 56.1 ¶ 27); and (iii) whether Brewster offered an appropriate IEP to M. for the 2013–14 school year (Pls.' 56.1 ¶ 32; Def.'s 56.1 ¶ 32).

On October 21, 2013, Plaintiffs submitted a due process complaint to Defendant pursuant to the IDEA and the New York State Education Law ("Due Process Complaint"). (See Due Process Compl., dated Oct. 21, 2013.) Plaintiffs sought, among

other things: (1) "compensatory education services for [Brewster's] failure to timely evaluate and identify [M.] in the 2011–2012 School Year" in violation of Brewster's "Child Find" obligation under the IDEA; (2) "compensatory education services for [Brewster's] failure to fully implement [M.'s] IEP in the 2012–2013 School Year"; and (3) tuition "reimbursement for [Brewster's] failure to offer an appropriate program for the 2013–2014 School Year." (*Id.* at 17.)

On December 4, 2014, after conducting a hearing over seven days between February 3, 2014 and October 6, 2014, the IHO dismissed Plaintiffs' Due Process Complaint. (Findings of Fact and Decision, dated Dec. 4, 2014 ("IHO Decision"), at 1–2, 17.) The IHO determined that "[M.] was doing reasonably well with his studies" under the Section 504 Accommodation Plan in 2011–12 and the IHO did "not find . . . that [Brewster] violated its 'child find obligations for [that] year." (*Id.* at 14.) The IHO also found that M. "demonstrated . . . progress" under Brewster's IEP in 2012–13 and also that M.'s neurologist "had problems with the application of the drug Strattera which may have caused [M.'s] tics to worsen and require [M.'s] homebound instruction at the end of the [2012–13] school year." (*Id.* at 16.) The IHO concluded that Brewster "offered [M.] FAPE ['free appropriate public education' pursuant to 20 U.S.C. § 1412] for the 2013–2014 school year," noting that the 2013–14 IEP's continued "recommendation to place [M.] in an integrated co-teaching class was supported by [M.'s] demonstrated ability to progress in that setting" in 2012–13. (*Id.* at 15, 17.) The IHO "ordered [that] the Parents' Due Process complaint for 2011–2012, 2012–2013, and 2013–2014 is denied." (*Id.* at 17.)

On February 11, 2015, following an appeal by Plaintiffs, the SRO affirmed the IHO's findings, in a thorough, single-spaced twenty-eight-page decision. (*See* Decision No. 15–009, dated Feb. 11, 2015 ("SRO Decision").) The SRO determined, among other things, that there is no reason to disturb the IHO's conclusion that Brewster "did not violate its child find obligations for the 2011–12 school year," citing the facts that "[M.] was responsive to the section 504 accommodations provided to him by [Brewster]" and that "[M.'s] class grades and test scores reflected average performance." (*Id.* at 11, 13 & n.7, 27.) The SRO also found that the "record does not support a finding that [Brewster] . . . failed to provide [M.] with the accommodations in the [2012–13] IEP in a material way, such that [Brewster] failed to offer [M.] a FAPE for the 2012–13 school year," stating, among other things, that the "record does not support the parents' concerns regarding [Brewster's] provision of consultant teacher services" and "testing accommodations." (*Id.* at 18–20.) Finally, the SRO affirmed the IHO's conclusion that Brewster "offer[ed] [M.] a FAPE for the 2013–14 school year," determining, among other things, that Brewster "appropriately considered [M.'s] needs, as well as [his] progress during the 2012–13 school year . . . in reaching its decision to recommend" the 2013–14 IEP. (*Id.* at 23, 27.)

On June 11, 2015, Plaintiffs filed their Complaint in this Court seeking to "reverse the February 11, 2015 SRO Decision and the December 4, 2014 IHO Findings of Fact and Decision." (Compl. at 29.) On November 20, 2015, Plaintiffs moved for summary judgment (*see* Pls.' Mot. for Summ. J., dated Nov. 20, 2015), arguing, among other things, that: (1) The SRO erred by concluding that Brewster was not on notice of M.'s issues, "triggering its Child Find obligation" for the 2011–12 school year. (Pls.' Mem. of Law in Supp. of Its Mot. To Submit Additional Evid. & Mot. for Summ. J., dated Nov. 21, 2015

("Pls.' Mem"), at 6.) The SRO allegedly "ignored ... evidence in the record that [Brewster] not only knew about [M.'s] difficulties, but delayed in convening a [Committee on Special Education] meeting and implementing Special Education and Related Services" (*id.*); (2) "[T]he SRO should have considered objective evidence of [M.'s] regression over the course of the [2012–13] school year ... and [Brewster's] failure to implement [M.'s] IEP in a material and substantial way," including its "inconsistent consultant teacher services" and "failure to read tests aloud," resulted in a denial of FAPE in 2012–13 (*id.* at 12–13, 15 (capitalization omitted)); and (3) "The IHO and SRO ... gave insufficient weight to ... evidence demonstrating that [Brewster] failed to offer [M.] a FAPE for the 2013–2014 school year" (*id.* at 19 (capitalization omitted)). The SRO allegedly "ignored ... standardized testing exhibits" showing that M. "regressed over the course of the 2012–2013 [school year]" and the "inappropriateness" of Brewster's 2013–14 IEP which "was essentially the same as" the 2012–13 IEP. (*Id.* at 20–21.)[1]

On January 8, 2016, Defendant opposed Plaintiffs' summary judgment motion and cross-moved for summary judgment. (*See* Def.'s Notice of Cross–Mot. for Summ. J., dated Jan. 8, 2016.) In support of its cross-motion, Defendant argues, among other things, that: (1) "[T]he SRO's dismissal of the Parents' child find claim should be upheld" because "there was no reason to suspect that [M.] was a student with a disability in need of special education services during the first half of the 2011–2012 school year," because M. "met the proficiency standards on State assessments," "achieved grades in the 80s and 90s," and "D.E. stated that [M.] had done 'exceptionally well'" during the prior school year under the Section 504 Accommodation Plan (Def.'s Mem. at 5–6); (2) "[T]he SRO's decision that [Brewster] provided M. a FAPE for the 2012–2013 school year" should be affirmed because "the Record demonstrates that [Brewster] not only implemented the accommodations on the [2012–13] IEP, but consistently responded to the Parent's requests and concerns with regard to its implementation," including providing "consultant teacher services" and "testing accommodations," and also that "[M.] made progress" in 2012–13 (*id.* at 6–9); and (3) The "Court should affirm the SRO's decision that [Brewster's IEP] provided [M.] a FAPE for the 2013–2014 school year," because M.'s "progress during the 2012–2013 school year ... as evidenced by his report cards, progress on IEP goals and teacher comments ... all supported the recommendation of a similar program for the following school year" (*id.* at 9 (capitalization omitted)).

1. On November 20, 2015, Plaintiffs also moved to submit "additional evidence to supplement the administrative record," pursuant to the IDEA. (Pls.' Mot. To Submit Additional Evid., dated Nov. 20, 2015.) Plaintiffs sought to submit six additional documents "related to events which occurred after the completion of the due process hearing" in October 2014, including Eagle Hill progress reports, M.'s psychological and language evaluations, and letters by M.'s neurologist. (Pls.' Mem. of Law in Supp. of Its Mot. To Submit Additional Evid., dated Nov. 20, 2015, at 2–3.)

Defendant opposed this motion, arguing, among other things, that Plaintiffs' additional documents "pertain to the 2014–2015 school year" and "are irrelevant to the instant proceeding—which pertains to the 2011–2012, 2012–2013 and 2013–2014 school years," and are "duplicative" of the administrative record. (Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. & in Opp. to Pls.' Mot. for Summ. J. & To Admit Additional Evid., dated January 8, 2016 ("Def.'s Mem."), at 23–24.)

On January 19, 2016, Plaintiffs filed a Reply. (*See* Pls.' Reply Mem. of Law in Supp. of Its Mot. for Summ. J., dated Jan. 19, 2016 ("Pls.' Reply").) On January 28, 2016, Defendant filed a Reply. (*See* Def.'s Reply Mem. of Law in Supp. of Its Mot. for Summ. J., dated Jan. 28, 2016 ("Def.'s Reply").)

On March 17, 2016, the Court heard helpful oral argument from the parties. (*See* Hr'g Tr., dated Mar. 17, 2016 ("3/17/16 Hr'g Tr.").)

**For the reasons set forth below, Plaintiffs' motion for summary judgment and motion to submit additional evidence are denied and Defendant's motion for summary judgment is granted.[2]**

## II. Legal Standard

■ "A motion for summary judgment in the IDEA context is 'in substance an appeal from an administrative determination, not a summary judgment.'" *E.E. v. New York City Dep't. of Educ.*, 2014 WL 4332092, at *4 (S.D.N.Y. Aug. 21, 2014) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir.2005)). "The standard of review requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir.2014) (internal quotation marks omitted). "The district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Hardison v. Bd. of Educ. of the Oneonta City School Dist.*, 773 F.3d 372, 385–86 (2d Cir.2014) (internal quotation marks and brackets omitted).

■ "In undertaking this independent review, [courts] are ... restrained by our lack of specialized knowledge and educational expertise; we must defer to the administrative decision particularly where the state officer's review has been thorough and careful." *M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 138–39 (2d Cir.2013) (internal quotation marks and brackets omitted). "While we will not rubber stamp administrative decisions, we remain equally mindful that we cannot substitute our own notions of sound educational policy for those of the school authorities under review." *Id.* at 139 (internal quotation marks omitted). "[T]he district court's analysis will hinge on ... whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir.2012). "Determinations grounded in thorough and logical reasoning should be provided more deference than decisions that are not." *Id.*

■ IDEA contains a "Child Find" obligation, which is a duty to identify, locate, and evaluate children who are suspected of having a disability and who are in need of special education and related services. *A.P. ex rel. Powers v. Woodstock Bd. of Educ.*, 572 F.Supp.2d 221, 224–25 (D.Conn. 2008) (citing 20 U.S.C. § 1412(a)(4)(A)), *aff'd*, 370 Fed.Appx. 202 (2d Cir.2010). "[T]he IDEA is not an absolute liability statute and the 'Child Find' provision does not ensure that every child with a disability [in need of special education and related services] will be found." *J.S. v. Scarsdale Union Free School Dist.*, 826 F.Supp.2d

---

2. Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.

635, 660 (S.D.N.Y.2011) (quoting *A.P.*, 572 F.Supp.2d at 225).

■■■ "States that receive funding under the IDEA must provide all disabled children with a [FAPE]." *C.F.*, 746 F.3d at 72. "FAPE requires both that the special education and related services are provided in conformity with the [IEP] and also that the IEP is 'reasonably calculated to enable the child to receive educational benefits.'" *A.P.*, 572 F.Supp.2d at 230. The IDEA "does not require that a child be provided with the optimal programmatic alternative" but "calls only for selection of a[n IEP] that provides a basic floor of opportunity, that is likely to produce progress, not regression." *C.F.*, 746 F.3d at 72 (internal quotation marks and citation omitted).

And, "[w]hile the Second Circuit has yet to address the standard for admitting additional evidence in an IDEA case, courts within this district have adopted ... a rebuttable presumption prohibiting additional evidence that was not presented during the administrative proceedings." *M.B. v. New York City Dep't of Educ.*, 2015 WL 6472824, at *2 (S.D.N.Y. Oct. 27, 2015).

## III. Analysis

### (1) Brewster Did Not Violate Its "Child Find" Obligation in the 2011–12 School Year

■■■ Plaintiffs argue, among other things, that D.E.'s "communications with [M.'s] teachers about academic difficulties" in the Fall of 2011, Brewster's knowledge "of [M.'s] possible ... diagnoses alongside [Tourette's Syndrome]," and M.'s "consistent below grade level performance in Math and Reading" triggered Brewster's "Child Find" obligation and warranted a referral of M. for special education long

before D.E. requested one in December 2011. (Pls.' Mem. at 6–7.)

Defendant counters, among other things, that the "SRO's decision is reasoned and supported by the Record, and therefore entitled to deference." (Def.'s Mem. at 5.) Among other things, the progress indicated in M.'s report cards, M.'s "proficiency scores on the State Assessments," and the "Parent's own observations confirm that there was no reason to suspect that [M.] required special education services going into his fifth grade." (*Id.* at 5–6.)

The IHO dismissed Plaintiffs' "Child Find" claim, stating that "the facts show that [Brewster] had been providing [the Section 504 Accommodation Plan] for [M.'s] Tourette's Syndrome since the fifth grade and that he was doing reasonably well with his studies at that time" and M.'s own evaluator, Dr. Jo Anne Gorski, "indicated that [M.] 'had average abilities in reading, writing and math' at the beginning of the 5th grade." (IHO Decision at 14.) The SRO also determined that the "record does not support a finding that during the beginning of the 2011–12 school year [Brewster] had reason to suspect that [M.] ... required special education programs." (SRO Decision at 13.) The SRO noted that, during 2010–11, the Parents stated that M. had done "exceptionally well" under the Section 504 Accommodation Plan, that M. "met the proficiency standards" on the May 2011 New York State assessments in English and math, and that M.'s grades were in the 80s and 90s. (*Id.* at 12.)

The Court independently has reviewed the record, including the testimony of D.E., of M.'s neurologist, Dr. Ronald Jacobson, and of Brewster's teachers; evaluation reports; report cards; standardized test results; and e-mail communications between D.E. and Brewster. The Court finds that the SRO's (and the IHO's) rul-

ings that Brewster did not violate its "Child Find" obligation is supported by a preponderance of the evidence and is "owe[d] deference." *J.S.*, 826 F.Supp.2d at 661. Brewster's Section 504 Accommodation Plan provided "modified homework assignments," "time to visit the school nurse's office to release tics as needed," "preferential seating," and "testing accommodations." (Ex. 2 at 2–3.) The Section 504 Accommodation Plan reflected that, at the April 14, 2011 Section 504 meeting, D.E. stated that M. had done "exceptionally well" and she "credit[ed] this success to . . . teachers going 'above and beyond' to develop a [Section 504] plan that helped [M.] to manage his tics." (*Id.* at 1.) M. met the "proficiency standard" of the New York State Testing Program at the end of the prior school year, *i.e.* 2010–11. (Ex. DD at 3.) In the Fall of 2011, M.'s grades remained in the 80s and 90s. (Ex. 29.) M.'s private psychologist, Dr. Jo Anne Gorski, wrote in a report, dated January 12, 2012, that M.'s "academic skills indicated Average ability when compared with same-age peers." (Ex. 24 at 15.)

█ The preponderance of the evidence also indicates that, during the Fall of 2011, M. "did not need special education services." *A.P.*, 572 F.Supp.2d at 225. "A student could . . . qualify for accommodations under Section 504 of the Rehabilitation Act and yet not be entitled to special education services under IDEA." *Maus v. Wappingers Cent. School Dist.*, 688 F.Supp.2d 282, 288 (S.D.N.Y.2010). "[C]ourts have held that a state's child find duty is triggered when it has . . . reason to suspect that special education services may be needed to address [the] disability." *J.S.*, 826 F.Supp.2d at 660 (internal quotation marks omitted). Here, "[M.] responded well to the assistance . . . provided" and "was performing at grade level." *A.P.*, 572 F.Supp.2d at 225. The Court agrees

with the SRO and the IHO that the school district did not violate its "Child Find" obligation. *Id.* at 227.

**(2) Brewster Did Not Deny M. a FAPE in the 2012–13 School Year**

█ Plaintiffs argue, among other things, that "discrepancies between the services required by [M.'s 2012–13] IEP and the services [Brewster] actually provided during the 2012–2013 school year . . . resulted in a denial of FAPE." (Pls.' Mem. at 10, 19.) Plaintiffs rely upon Brewster's alleged "inconsistent consultant teacher services," "failure to read tests aloud," failure to provide a calculator, "failure to 'check for understanding'," failure to provide "appropriate assistive technology . . . training," and "failure to provide IEP mandated speech and language services," as "shortfalls" resulting in M.'s "regression." (*Id.* at 11–15.) Plaintiffs also contend that when "[M.'s] tics had increased with such frequency and severity" by the end of 2012–13, Brewster's placement of M. in "homebound instruction was not appropriate." (*Id.* at 17–18.)

Defendant counters, among other things, that "the SRO found that . . . the Parents' allegations with regard to the implementation of the . . . [2012–13] IEP were without merit." (Def.'s Mem. at 6–7; *see also* SRO Decision at 18.) Defendant contends that Brewster "not only implemented the . . . IEP, but consistently responded to the Parent's requests and concerns" about "consultant teacher services," "testing accommodations," "use of a calculator," and "checking for understanding." (Def.'s Mem. at 7–8.) Defendant also points out that, "[M.] continued to earn grades in the 80s and 90s . . . in an unmodified, grade-level curriculum" and that "M. made progress . . . prior to his Tourette's Syndrome worsening and his medication changes, which caused [M.] to be placed on home

instruction for the end of the 2012–2013 school year." (*Id.* at 9.)

The IHO found that "[t]oward the end of the 2012–2013 school year[,] [M.'s] tics worsened" and M.'s private neurologist, Dr. Ronald Jacobson, by letter to Brewster, dated May 31, 2013, "advised that [M.] could not attend school" in June 2013. (IHO Decision at 3.) The IHO found that when "[M.] was not able to attend school[,] [Brewster] provided home instruction." (*Id.*) The SRO also found that the "record does not support a finding that [Brewster] substantially or significantly failed to provide [M.] with the accommodations in the [2012–13] IEP in a material way." (SRO Decision at 18.) Brewster provided "consultant teacher services," "testing accommodations," "use of a calculator," "checking for understanding," and "assistive technology training." (*Id.* at 19–21.)

Based on the Court's independent review, "the SRO correctly found that [there] was not such a material deviation from the student's IEP that [ ]he was denied a FAPE." *Y.F. v. New York City Dep't of Educ.*, 2015 WL 4622500, at *6 (S.D.N.Y. July 31, 2015) (emphasis added). For one thing, Plaintiffs' allegation of "inconsistent consultant teacher services" is unpersuasive, because the IEP did not require that M.'s special education teacher also consistently serve as the teacher in his academic lab. (Ex. 5 at 7.) And D.E. testified that when she expressed concern about inconsistent staffing, Brewster, in fact, arranged to have M.'s special education teacher serve as his teacher in the academic lab. (Tr. at 519:17–520:4, 565:12–25.) Plaintiffs' allegation of "failure to read tests aloud" is similarly unpersuasive. The IEP required only that tests be "read to the Student." (Ex. 5 at 9.) Plaintiffs acknowledge that M.'s "teachers . . . read the entire test aloud at the beginning of the period to the entire class." (Pls.' Mem. at 13.) And, M.'s special education teacher testified that Brewster, in fact, accommodated D.E.'s request that tests be read to M. (alone) question-by-question. (Tr. at 163:2–25, 171:13–172:2.) Third, the testimony supports the SRO's determination that Brewster implemented other IEP requirements of providing a calculator (Tr. at 197:19–198:10, 228:6–10), checking for M.'s understanding of directions (*id.* at 161:25–162:8), and training M. to use assistive technology, such as an iPad (*id.* at 252:8–254:7). Plaintiffs' remaining arguments about various aspects of the school program "are not contrary to any specific requirement in the IEP." *Y.F.*, 2015 WL 4622500, at *7.[3]

The Court further finds that the preponderance of the evidence supports the IHO's (and the SRO's) determinations that the changes to M.'s medication regimen as required by M.'s own doctor (Tr. at 760:11–19)—rather than any failure of Brewster—"caused [M.'s] tics to worsen and require[d] [M.'s] homebound instruc-

---

3. Plaintiffs' allegation that Brewster "failed to provide Speech and Language Services to [M.] for nearly three months" during 2012–13 (Pls.' Mem. at 12) is also unavailing. The record reflects that M. missed speech sessions because Brewster was accommodating D.E.'s request that M.'s special education teacher also staff his academic lab. (Tr. 563:22–565:7; *see also supra* p. 11; Tr. at 519:17–520:4, 565:12–25.) "The school followed [the Parents'] instructions in good faith and then continued to seek a resolution with the Par-

ents." *A.P.*, 572 F.Supp.2d at 231 ("The Court finds that the Parents, not the Board, are responsible for the fact that [the student] did not have a shared aide [as required by the IEP] during the first half of his sixth-grade year"). Further, M. achieved both speech and language goals contained in his IEP that year. (Ex. AAA at 6.) *See, e.g., S.H. ex rel. W.H. v. Eastchester Union Free School Dist.*, 2011 WL 6108523, at *6 n. 3 (S.D.N.Y. Dec. 8, 2011).

tion" at the end of 2012–13 (IHO Decision at 16; SRO Decision at 5). Brewster placed M. in homebound instruction after M.'s neurologist, Dr. Jacobson, wrote a letter, dated May 10, 2013, to Brewster stating that M. was "unable to attend school" due to "severe ... tics." (Ex. W.) In a letter, dated May 31, 2013, to M.'s pediatrician, Dr. Jacobson also wrote that "a trial of [the drug] Strattera" resulted in "worse tics ... to the point where [M.] really cannot attend school." (Ex. X.) D.E. testified that "Dr. Jacobson determined [M.] should be homebound" (Tr. at 584:8–9) and that M. "could only tolerate one hour of tutoring a day" by the end of the 2012–13 school year (id. at 584:21–25). In response to Dr. Jacobson's determination, Brewster supplied two teachers to tutor M. at home in the academic "core subjects." (Id. at 292:7–15, 584:21–585:18.) Any "failure to follow the IEP's requirements to the letter was excusable under the circumstances." *Catalan ex rel. E.C. v. Dist. of Columbia*, 478 F.Supp.2d 73, 76 (D.D.C.2007) (where the student's "fatigue was rendering the [speech] therapy unproductive").

And, the preponderance of evidence supports the SRO's and the IHO's determinations that M. made progress in 2012–13. *See infra* p. 14–15: *A.P. v. Woodstock Bd. of Educ.*, 370 Fed.Appx. 202, 205 (2d Cir. 2010) (summary order) (where "the record evidence demonstrates that [the student] made improvements throughout his sixth-grade year"); *S.H.*, 2011 WL 6108523, at *6 n. 3; *S.A. v. New York City Dep't of Educ.*, 2014 WL 1311761, at *18 (E.D.N.Y. March 30, 2014) ("[T]he deprivation did not violate [the student's] right to a FAPE because the record reflects that he made progress."). The Court concludes that Defendant provided M. with a FAPE and that "Plaintiff[s'] request for compensatory educational services is denied." *L.O. v. New York City Dep't of Educ.*, 94 F.Supp.3d 530, 571 (S.D.N.Y.2015).

**(3) Both the SRO and the IHO Correctly Found That Brewster Offered a FAPE to M. for the 2013–14 School Year**

Plaintiffs argue, among other things, that Brewster's 2013–14 IEP "failed to offer [M.] a FAPE" and "the SRO ... failed to acknowledge that the [2013–14] IEP was essentially a copy of the [2012–13] IEP" though M. had "regressed" over the course of 2012–2013. (Pls.' Mem. at, 19–20 (capitalization omitted).) They state that "[o]n the [New York State Testing Program], [M.] scored at a Level 2: Basic Standard, at the end of 5th Grade (2011–2012 SY) and at a Level 1: Below Standard, at the end of 6th Grade (2012–2013 SY) in both [English] and Math." (Id.) According to M.'s Parents, on the "Scholastic Reading Inventory," M.'s "reading scores plummeted" from "Basic Range" to "Below Basic Range." (Id.)

Defendant counters persuasively, among other things, that Brewster "considered all of the relevant evaluative data," including state and district-wide testing results, report cards, teacher comments, and M.'s progress during the 2012–13 school year. (Def.'s Mem. at 9–10.) They "supported the recommendation of a similar program" for 2013–14. (Id. at 9.) Defendant further points out that "later testing conducted by Eagle Hill in the fall of 2013 indicated that [M.] entered Eagle Hill with average, or above average, reading skills." (Id. at 10.)

The IHO found that the information presented to Brewster did not indicate a change in M.'s needs for the 2013–14 school year or that he needed a different setting. (IHO Decision at 15.) And, the 2013–14 IEP was "likely to produce progress, not regression." (Id. at 17.) The SRO determined that "the evidence ... demonstrated that [M.] made educational progress during the 2012–13 school year"

and Brewster "appropriately considered [M.'s] progress in developing [M.'s] IEP for the 2013–14 school year." (SRO Decision at 25–26.)

Upon an independent review of the record, the Court finds that the SRO's and the IHO's rulings are supported by "a preponderance of the evidence" and "merit deference." *Hardison*, 773 F.3d at 385, 387. Among other things, M.'s progress pursuant to the 2012–13 IEP demonstrates that a similar program for 2013–14 was likely to yield "progress, not regression." *C.F.*, 746 F.3d at 72. M.'s grade point average remained in the 80s and the 90s in a grade-level, general education curriculum through 2012–13. (Ex. 29; Tr. at 174:14–175:16; *see also* Ex. 8 at 2.) "[T]he attainment of passing grades and regular advancement from grade to grade are generally accepted indicators of satisfactory progress." *A.P.*, 572 F.Supp.2d at 232 (quoting *Walczak v. Florida Union Free School Dist.*, 142 F.3d 119, 130 (2d Cir. 1998)). When Eagle Hill tested M. at the start of 2013–14, M. received "average" in reading comprehension. (Ex. SSSS at 28–29.) At Brewster's Committee on Special Education meeting on September 12, 2013, the "parent reported that [M.] had undergone an adjustment to a new medication regimen [and] [a]s a result, [M.] had a good summer." (Ex. 8 at 2; *see also* Tr. 765:17–22, 769:4–11.) The Court finds that the record supports the SRO's and the IHO's determinations that Brewster's placement of M. in a program for 2013–14 similar to the one for 2012–13 was appropriate. *S.H.*, 2011 WL 6108523, at *10, *13.

Because the Court concludes that Brewster offered M. a FAPE for 2013–14, it need not reach Plaintiffs' claim regarding the appropriateness of their unilateral private school placement. *R.B. v. New York City Dep't. of Educ.*, 15 F.Supp.3d 421, 437 (S.D.N.Y.2014); *see also* SRO Decision at 28. "Regardless of the adequacy of that [private] school, the [Defendant] need not reimburse Plaintiffs for tuition." *R.B.*, 15 F.Supp.3d at 437.

**Plaintiffs' Motion To Submit Additional Evidence Is Denied**

And, because the Court does not reach Plaintiffs' claim regarding the appropriateness of their unilateral private school placement, Plaintiffs' motion to submit additional evidence relating to "the appropriateness of the unilateral placement" (3/17/16 Hr'g Tr. at 3:17–20) is denied as moot. *Murray v. Montrose County School Dist.*, 51 F.3d 921, 931 (10th Cir.1995); *see also M.B.*, 2015 WL 6472824, at *4.

### IV. Conclusion & Order

For the reasons set forth above, Plaintiffs' motion for summary judgment [# 21] and motion to submit additional evidence [# 19] are denied and Defendant's motion for summary judgment [# 24] is granted. It is respectfully requested that the Clerk close this case.